FILED
2010 Mar-11 AM 09:20
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| EDNA P. JEFFERSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 09-G-0297-NE |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

**MEMORANDUM OPINION**

The plaintiff, Edna P. Jefferson, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Social Security benefits. Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. §405(g).

**STANDARD OF REVIEW**

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached

is reasonable and supported by substantial evidence." Bloodsworth, at 1239 (citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth, at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish her entitlement for a period of disability, a claimant must be disabled. The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I). For the purposes of establishing entitlement to disability benefits, physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R.§ 404.1520(a)-(f). The Commissioner must determine in sequence:

    (1)    whether the claimant is currently employed;

    (2)    whether she has a severe impairment;

    (3)    whether her impairment meets or equals one listed by the Secretary;

    (4)    whether the claimant can perform her past work; and

> (5) whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir.1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job." Pope at 477; accord Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner further bears the burden of showing that such work exists in the national economy in significant numbers. Id.

In the instant case, ALJ Patrick R. Digby determined the plaintiff met the first two tests, but concluded that while she has an impairment or combination of impairments considered "severe," she did not suffer from a listed impairment. In his decision, the ALJ found that the plaintiff:

> has the residual functional capacity to perform light work with a sit/stand option. She can sit for thirty minutes at one time and stand for thirty minutes at one time. On a frequent basis, she can perform pushing and pulling with the hand and foot controls. Occasionally, she can stoop, crawl and climb ramps and stairs. She is restricted from climbing ladders, ropes and scaffolding. She has a problem reaching and occasionally can lift overhead bilaterally. The claimant has no problem with her fingers. She could avoid extreme cold and heat, hazardous machinery and unprotected heights. She can remember locations and work like procedures, understand short instructions and handle one or two tasks. She cannot remember detailed instructions. She can handle attention for one or two step tasks for two hours at one time.

[R. 14-15]. Accordingly, the ALJ found the Plaintiff not to be disabled.

## THE STANDARD WHEN THE CLAIMANT TESTIFIES SHE SUFFERS FROM DISABLING PAIN OR OTHER SUBJECTIVE SYMPTOMS

In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." Foote, at 1560.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). In this circuit medical evidence of pain itself, or of its intensity, is not required.

> While both the regulations and the Hand standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the Hand standard a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself. See 20 CFR §§ 404.1529 and 416.929; Hale at 1011.

Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1215 (11th Cir. 1991)(parenthetical information omitted)(emphasis added). Furthermore, it must be kept in mind that "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." Foote at 1561. Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, he must be found disabled unless that testimony is properly discredited.

When the Commissioner fails to credit a claimant's pain testimony, he must articulate reasons for that decision.

> It is established in this circuit that if the Secretary fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Secretary, as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the Secretary be supported by substantial evidence.

Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987). Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if his reasons are not supported by substantial evidence, the pain testimony of the plaintiff must be accepted as true.

## THE STANDARD FOR REJECTING THE TESTIMONY OF A TREATING PHYSICIAN

As the Sixth Circuit has noted: "It is firmly established that the medical opinion of a treating physician must be accorded greater weight than those of physicians employed by the government to defend against a disability claim." Hall v. Bowen, 837 F.2d 272, 276 (6th Cir. 1988). "The testimony of a treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary." McGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); accord Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1216 (11th Cir. 1991). In addition, the Commissioner "must specify what weight is given to a treating physician's opinion and any reason for giving it no weight ...." McGregor, 786 F.2d at 1053. If the Commissioner ignores or fails to properly refute a treating physician's testimony, as a matter of law that testimony

must be accepted as true.  McGregor, 786 F.2d at 1053; Elam, 921 F.2d at 1216.  The Commissioner's reasons for refusing to credit a claimant's treating physician must be supported by substantial evidence.  See McGregor, 786 F.2d at 1054; cf. Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987)(articulation of reasons for not crediting a claimant's subjective pain testimony must be supported by substantial evidence).

### THE IMPACT OF A VOCATIONAL EXPERT'S TESTIMONY WHEN PAIN OR OTHER SUBJECTIVE SYMPTOMS ARE INVOLVED

It is common for a vocational expert ("VE") to testify at a claimant's hearing before an ALJ, and in many cases such testimony is required.  The VE is typically asked whether the claimant can perform his past relevant work or other jobs that exist in significant numbers withing the national economy based upon hypothetical questions about the claimant's abilities in spite of his impairments.  "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."  Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).

If the claimant is unable to perform his prior relevant work the burden shifts to the Commissioner to establish that he can perform other work.  In such cases, if the vocational expert testimony upon which the ALJ relies is based upon a hypothetical question that does not take into account all of the claimant's impairments, the Commissioner has not met that burden, and the action should be reversed with instructions that the plaintiff be awarded the benefits claimed.  This is so even if no other hypothetical question is posed to the VE.  See Gamer v. Secretary of Health and Human

Services, 815 F.2d 1275, 1280 (9th Cir. 1987)(noting that when the burden is on the Commissioner to show the claimant can do other work, the claimant is not obligated to pose hypothetical questions in order to prevail). However, it is desirable for the VE to be asked whether the claimant can perform any jobs if his subjective testimony is credited. Such a hypothetical question would allow disability claims to be expedited in cases in which the ALJ's refusal to credit the plaintiff's pain testimony is found not to be supported by substantial evidence.

In Varney v. Secretary of Health and Human Services, 859 F.2d 1396 (9th Cir. 1987), the Ninth Circuit adopted the Eleventh Circuit rule which holds that if the articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence, that testimony is accepted as true as a matter of law. Id at 1401. The court noted that "[a]mong the most persuasive arguments supporting the rule is the need to expedite disability claims." Id. If the VE is asked whether the claimant could perform other jobs if his testimony of pain or other subjective symptoms is accepted as true, the case might be in a posture that would avoid the necessity of a remand. As Varney recognized, if the VE testifies the claimant can perform no jobs if his pain testimony is accepted as true, the only relevant issue would be whether that testimony was properly discredited. Id.

## DISCUSSION

In his decision, the ALJ found that the plaintiff suffered from the severe impairments of "diabetes mellitus, hypertension, obesity and post back surgery pain." [R. 12]. However, he found that the plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. . . ." [R. 14]. The ALJ concluded under step five of the sequential evaluation that the plaintiff can perform other work that exists in significant numbers in the national economy and is, therefore, not disabled.

The plaintiff was 50-years-old at the time of the ALJ's decision. She has a 10th grade education and has worked as a janitor and child care worker. The ALJ found that the plaintiff suffered from severe impairments of diabetes mellitus, hypertension, obesity and post back surgery pain. [R. 12]. On January 28, 2004, she reported back pain and leg pain following an injury at work when she lifted a "rather heavy baby" from a changing table. [R. 176]. She continued to have low back pain and bilateral leg numbness. On May 13, 2004, the plaintiff was admitted to the hospital for intractable back pain. [R. 189]. A CT scan of her lumbar spine revealed a "[m]ild to moderate canal compromise at L4-5 secondary to a broad-based disc bulge and ligamentum flavum hypertrophy." [Id.]. A lumbar myelogram performed the same day showed that:

> The patient has moderate to severe central canal stenosis at L4-5 due to the presence of a disc herniation which is left paracentral, preferentially amputating nerve root filling of the left L5 nerve root corresponding to the patient's symptomatology.

[R. 187].

On May 15, 2004, she underwent a left L4-5 decompressive laminotomy with discectomy. [R. 197]. Her surgeon, Larry M. Parker, M.D., prescribed physical therapy. On July 31, 2004, the plaintiff had attended eight physical therapy sessions but reported no improvement in her pain, which she reported as a nine on a 10-point scale. [R. 207]. On August 23, 2004, Dr. Parker assigned a 10 percent impairment rating and released her to work with a 40-pound lifting restriction on a permanent basis. [R. 225]. On October 19, 2004, she returned to Dr. Parker complaining of back pain and left leg pain with numbness. [R. 224].

Dr. Parker declared the results of a November 8, 2004, MRI of her lumbar spine to be normal, but because the plaintiff continued to experience pain, he referred her to Eric Beck, M.D., for pain management. [R. 223]. Dr. Beck first evaluated the plaintiff on December 8, 2004, and noted her complaints of continuing low back pain with radiation to her feet. [R. 244]. On January 19, 2005, she was having "increased pain and stiffness in the beck with burning pain in the leg." [R. 243]. Dr. Beck prescribed Skelaxin for spasms, and Lorcet Plus for pain. [Id.]. A February 21, 2005, treatment note from Dr. Beck showed her "[l]ow back pain status quo," and he advised her to continue with Lorcet Plus and a home exercise program. [R. 242]. By June 22, 2005, she was taking two Lortab 10s and walking and stretching daily. [R. 241].

On July 25, 2005, Dr. Beck completed a Clinical Assessment of Pain form. Dr. Beck said that the plaintiff has pain to such an extent as to be distracting to adequate

performance of daily activities or work. [R. 246]. He said physical activity would increase her pain. [Id.]. Dr. Beck opined that the plaintiff would be absent from work at least three times a month. [Id.]. He thought that drug side effects would be severe and would limit the plaintiff's effectiveness because of distraction, inattention and drowsiness. [R. 247]. The ALJ gave little weight to Dr. Beck's 2005 opinion, stating that "the form was based on subjective complaints and its credibility is highly questionable." [R. 17].

By October 20, 2005, the plaintiff continued to complain of low back pain radiating to her left leg. [R. 240]. Dr. Beck noted a slightly altered gait and that the plaintiff continued on Lortab 10, Trazodone and Paxil. [Id.]. On February 23, 2006, she reported to Dr. Beck that she had good days and bad. [R. 253].

On December 17, 2007, Dr. Beck completed a Medical Source Opinion (Physical), in which he limited the plaintiff to standing and walking for 30 minutes at a time, for less than two hours, and sitting for one hour at a time, for six hours a day. [R. 299]. He thought the plaintiff could lift and carry 10 pounds frequently, and 20 pounds occasionally. [Id.]. The ALJ gave this opinion significant weight "as Dr. Beck is a treating physician and this opinion was based upon his examination of her and not her subjective allegations." [R. 17]. However, he found the plaintiff could perform light work with a sit/stand option.

The ALJ ignores that Dr. Beck's opinion was that plaintiff could sit, stand or walk for less than eight hours a day. He also ignores Dr. Beck's statement:

> Patient has post-laminectomy syndrome with longstanding back pain. She has placed good effort in her rehabilitation <u>but remains very symptomatic</u>.

[R. 300](emphasis added)  The ALJ's misinterpretation of Dr. Beck's medical source opinion is evidenced in his own decision.  The ALJ stated that Dr. Beck's December 17, 2007, opinion "determined the claimant could stand for thirty minutes at one time and walk for thirty minutes at one time for a total of <u>less than two hours</u> during an eight-hour workday" and that the plaintiff "could sit for one hour at a time for a total of six hours during an eight-hour workday."  [R. 13](emphasis added)  However, later in his opinion, the ALJ describes Dr. Beck's opinion as being that the plaintiff "was capable of sitting for up to six hours and standing and walking for two hours."  [R. 16].  Clearly, Dr. Beck's opinion[1] was that the plaintiff could sit, stand and walk for less than eight-hours a day. [R. 299].

      Moreover, the medical evidence also shows a "longitudinal history of complaints and attempts at relief" that support the plaintiff's pain allegations.  <u>See</u> SSR 96-7P 1996 WL 374186 at *7 ("In general, a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense or persistent pain or other symptoms for the purposes of judging the credibility of the individual's statements.").

---

[1] The ALJ stated that he gave Dr. Beck's December 17, 2007, opinion "significant weight as Dr. Beck is a treating physician and this opinion was based upon his examination of her and not her subjective allegations." [R. 17].  If this were so, the ALJ would have found the plaintiff disabled based solely on Dr. Beck's opinion.

The ALJ's misinterpretation of Dr. Beck's opinion and his failure to properly credit the plaintiff's testimony renders his decision not supported by substantial evidence. The ALJ failed to properly articulate reasons for refusing to credit the plaintiff's pain testimony. Therefore, the plaintiff's testimony must be accepted as true. The plaintiff testified that because of her pain, she must take five to six breaks a day for 30 minutes at a time for a total of two and a half hours. [R. 44-45]. She testified that from six to eight days a month, she cannot get out of the bed. [R. 45].

The ALJ found that the plaintiff is unable to return to her past relevant work. At the hearing, Martha Daniel, a vocational expert, testified that a hypothetical individual with the plaintiff's limitations with pain and the "inability to get out of bed six to eight days a month and the rest periods for two and a half hours a day would preclude all work activity." [R. 54]. Because the testimony of the plaintiff and her treating physician, Dr. Beck, must be accepted as true, the plaintiff is unable to work.

## CONCLUSION

For the reasons set forth above, the Commissioner failed to carry his burden at step five of showing the plaintiff could perform other work. Accordingly, the plaintiff is disabled within the meaning of the Social Security Act. An appropriate order remanding the action with instructions that the plaintiff be awarded the benefits claimed will be entered contemporaneously herewith.

DONE and ORDERED 10 March 2010.

_____
UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.